IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RYAN RODMAN, Individually and on Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) Case No. 16-cv-10903 ) |
| v. | ) Judge ) |
| TANPHI WELLNESS, INC., d/b/a EVOLUTION FITNESS CLUB; and AFFILIATED ACCEPTANCE CORPORATION, | ) Magistrate Judge ) ) JURY TRIAL DEMANDED ) ) |
| Defendants. | ) |

## CLASS ACTION COMPLAINT

Now Comes the Plaintiff, Ryan Rodman, by and through his undersigned counsel, Jeffrey Grant Brown, P.C., and for his Class Action Complaint against Tanphi Wellness, Inc. d/b/a Evolution Fitness ("Tanphi") and Affiliated Acceptance Corporation ("AAC"), alleges as follows:

### INTRODUCTION

1. This is a class action lawsuit that involves overcharging, improper bank account debiting, and other unlawful conduct committed by Tanphi and its billing and processing partner, AAC. Tanphi operates a health club in Oak Park, Illinois. Plaintiff signed a membership agreement with Tanphi that permitted it to debit Plaintiff's checking account a specified amount for a period of twenty-one months, along with an annual

maintenance fee. Tanphi and AAC, however, debited Plaintiff's account on a monthly basis in an amount greater than that contained in the contract; and debited two maintenance fees per year rather than one. Moreover, when Plaintiff sought to cancel his account in accordance with the Illinois Physical Fitness Services Act ("Physical Fitness Act")] and in accordance with the contract (and common law contract law), Tanhpi and AAC refused to accept the cancellation, continued to debit and charge Plaintiff's account, and demanded further maintenance fees.

2. Plaintiff brings this action on behalf of himself and similarly situated class members pursuant to the Electronic Funds Transfer Act ("EFTA"), Physical Fitness Act, the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") and related common law grounds to address Defendants' violations.

**THE PARTIES**

3. Defendant Tanphi is an Illinois corporation, conducting business as a physical fitness center as defined by 815 ILCS §645/2. Tanphi's facility is located at 711 Madison Street in Oak Park, Illinois. Tanphi conducts or has conducted business under the name "Evolution Fitness Club" and under the name "Bodyworx Fitness Multiplex".

4. Defendant AAC is a corporation organized and existing under the laws of the State of Missouri, and, according to its website at http://affiliatedacceptance.com, is engaged in the business of, among other things, billing and payment processing on behalf of health and fitness facilities nationwide.

5. Together, Defendants own and/or operate and/or manage billing and payment processing for the physical fitness center located at 711 Madison Street in Oak

Park, Illinois, referenced herein as "the Health Club".

6. Plaintiff Ryan Rodman is an individual and citizen of Glen Ellyn, DuPage County, Illinois, and resides within the Northern District of Illinois. Mr. Rodman was a member of the Health Club for several years preceding the filing of this complaint.

## JURISDICTION AND VENUE

7. Jurisdiction in this Court is conferred by 28 U.S.C. § 1331 and 15 U.S.C. §1693m, on the basis of federal question jurisdiction, because the matter concerns an action arising under a federal law, the EFTA. This Court's supplemental jurisdiction over Plaintiff's Illinois claims arising under the Physical Fitness Act, ICFA, and common law breach of contract is proper pursuant to 28 U.S.C. § 1367(a), because those claims are so related to claims in the action within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

8. Venue is proper in this Court because the illegal conduct alleged herein occurred primarily within the Northern District of Illinois and the Health Club is located within the Northern District of Illinois.

## THE CONTRACT

9. In July 2010, Plaintiff and the Health Club entered into a contract for use of the club and basic physical fitness services. The contract is attached as Exhibit 1, which has been redacted to remove personal identifying information ("the Agreement").

10. Exhibit 1 is an exact photocopy of the document signed by Plaintiff. The document appeared substantially as set forth in Exhibit 1 when it was presented to and

signed by Plaintiff, with very small font that is very difficult to read and portions of the document which are virtually illegible.

11. The Agreement does not specify any entity or assumed name of any entity that is responsible for operating the Health Club or for managing the billing and payment processing for the Health Club.

12. In particular, AAC's name, address, or telephone number do not appear anywhere on the Agreement.

13. Similarly, there is no address or telephone number for Tanphi located on the Agreement.

14. The Agreement provides for a twenty-one month membership, beginning July 2010, with monthly dues of $21.00.

15. Pursuant to its terms, after twenty-one months, the Agreement became a month-to-month agreement, with no conditions or requirements set forth to effectuate cancellation.

16. The Agreement also provides for an annual maintenance fee of $21.00.

17. Plaintiff's payment dues were to be paid by automatic debit from Plaintiff's checking account.

18. After the Agreement was executed, Plaintiff's bank account was originally automatically debited each month thereafter, in the amount $21.00.

19. At some point thereafter, without authorization, Defendants began debiting Plaintiff's bank account in the amount of $21.99. *See* Plaintiff's Statement of Account

attached as Exhibit 2.

20. Defendants also began debiting a maintenance fee of $17.50 every six months in the amount of $17.50, without Plaintiff's authorization. *See* Plaintiff's Statement of Account attached as Ex. 3.

21. No new contract providing for increased amounts was ever presented to, signed or agreed to by Plaintiff. Following the disagreements identified below and Plaintiff's request for a copy of what AAC understood to be the contract, AAC sent Plaintiff Exhibit 1.

## THE CANCELLATION

22. On November 21, 2015, Plaintiff appeared at the Health Club, returned the key fob he had been issued for admission to the Health Club in an envelope marked "Cancellation", handed the envelope to the Health Club's front desk employee and cancelled his membership and the Agreement.

23. Defendants' employee recorded the cancellation into its computer records at that time.

24. Defendants' Regional Manager, Lynn (last name unknown), subsequently confirmed the contemporaneous recording of the cancellation.

25. Defendants nonetheless continued to debit Plaintiff's bank account thereafter, without authorization.

26. Plaintiff contacted the Health Club to address the situation and Plaintiff was told he needed to contact AAC, as it had exclusive control over whether to accept the

cancellation.

27. Plaintiff then contacted AAC, which refused to accept the November 21, 2015, cancellation because, it claimed, the cancellation was not in writing, and was not sent specifically to Defendant AAC. AAC made that statement despite that the Health Club's website states that cancellation by phone is permitted.

28. On December 17, 2015, Plaintiff therefore drafted and sent to Defendants a formal cancellation letter and also advised Defendants of their unlawful conduct.

29. In response, AAC's representative, Stacey (last name unknown), employee number 230, called Plaintiff and questioned whether Plaintiff understood his contract. AAC stated that Plaintiff's account would continue to be charged in January, including the payment of his maintenance fee. It was also made clear that AAC acted in the capacity of a debt collector and that AAC would institute collection proceedings if Plaintiff did not pay the demanded amount.

30. Plaintiff then contacted regional manager, Lynn, so she could contact AAC and advise it of the November 21, 2015 cancellation. Lynn advised Plaintiff that Tanphi had a strict contract with AAC, which gave AAC exclusive control over billing and collection procedures and rendered Tanphi powerless to address the situation.

31. Defendants thus charged Plaintiff January monthly dues in the amount of $21.99 and a maintenance fee of $17.99.

32. In a letter dated January 8, 2016, to Defendants, Plaintiff set forth in detail the Defendants numerous violations of the law. *See* January 8, 2016 letter attached as Ex.

4.

33. In response, Defendant received an e-mail from AAC's legal counsel, who wished to discuss the matter. In a subsequent discussion, AAC's legal counsel noted that AAC was merely Tanphi's billing agent and AAC was simply following its contractual obligations with Tanphi in billing Plaintiff's account.

34. On information and belief, there are other health club facilities owned, managed or operated by Defendants that use agreements substantially similar to Exhibit 1.

35. On information and belief, the practices described herein (including the imposition of various charges) were applied to all members of multiple Evolution Fitness Clubs or other health club facilities owned and/or operated and/or managed by either or both of the Defendants, as a matter of policy.

**COUNT I - ILLINOIS PHYSICAL FITNESS SERVICES ACT**

36. Plaintiff incorporates paragraphs 1- 35 as if fully alleged herein.

37. Defendants' contracts are subject to the Physical Fitness Act, 815 ILCS 645/1 *et seq.* ("PFSA").

38. The Health Club and Defendants' other clubs are "physical fitness centers", as defined in 815 ILCS 645/2(a).

39. Defendants' memberships and services are for "basic physical fitness services" and "physical fitness services," as defined in 815 ILCS 645/2(b) and (c).

40. 815 ILCS 645/5 provides that "Every contract for physical fitness services shall set forth the customer's total payment obligation for services to be received pursuant to

the contract."

41. 815 ILCS 645/4 provides that "Every contract for physical fitness services shall be in writing" and that "all provisions, requirements and prohibitions which are mandated by this Act shall be contained in the written contract before it is signed by the customer. A copy of the written contract shall be given to the customer at the time the customer signs the contract. Physical fitness centers shall maintain original copies of all contracts for services for as long as such contracts are in effect and for a period of 3 years thereafter."

42. 815 ILCS 645/6 provides that: (a) Every contract for physical fitness services shall provide that: (1) the contract may be cancelled by the customer within 3 business days after the first business day after the contract is signed by the customer, and that all monies paid pursuant to said contract shall be refunded to the customer. For the purposes of this Section, business day shall mean any day on which the facility is open for business. . .

(b) Every contract for physical fitness services shall provide that notice of cancellation pursuant to subsection (a) of this Section shall be made in writing and delivered by certified or registered mail to the center at the address specified in the contract. All refunds to which a customer or his estate is entitled shall be made within 30 days of receipt by the center of the cancellation notice.

43. 815 ILCS 645/9(c) provides that "any contract for physical fitness services which does not comply with the applicable provisions of this Act shall be void and unenforceable."

44. 815 ILCS 645/10(a) provides that "unfair or deceptive acts and practices are prohibited …."

45. 815 ILCS 645/11 provides for enforcement of the PFSA, as follows:

> Any customer injured by a violation of this Act may bring an action for the recovery of damages. Judgment may be entered for 3 times the amount at which the actual damages are assessed, plus costs and reasonable attorneys' fees.

46. Defendants violated the Physical Fitness Act by increasing the member's, including Plaintiff's, payment obligations without execution of a new contract complying with the Physical Fitness Act.

47. The Agreement does not state the amount of or formula for any such increase, the total payment obligation on the contract under such increased rate, the time of any such increase, or the term of any such increase.

48. The Agreement also does not contain the required cancellation notice.

49. The Agreement therefore violates the Physical Fitness Act.

50. Plaintiff and the members of the class defined below were injured by Defendants' violations.

## CLASS ALLEGATIONS

51. Pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3), Plaintiff brings Count I on behalf of a class, consisting of all customers of Defendants in the State of Illinois whose payment obligations increased without execution of a new contract providing for such obligation or who otherwise suffered a violation of the Illinois Physical Fitness Services Act by either Defendants' act or omission.

52. The class is so numerous that joinder is impracticable. On information and belief, based on (a) the use of form letters and form statements, and (b) the number of Health Clubs and persons employed by them, there are more than 50 members of the class.

53. There are questions of law and fact common to the members of the class, which predominate over any questions that affect only individual class members. The predominant common questions include:

    (a) whether the PFSA allows a physical fitness center to increase the amounts payable by the consumer without execution of a contract providing for the new terms and otherwise complying with the PFSA

    (b) whether either Defendant has failed to include cancellation language in their contract or otherwise violated the PFSA, and

    (c) the appropriate relief to class members.

54. Plaintiff's claim is typical of the claims of the class members. All claims are based on the same factual and legal theories.

55. Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in complex civil litigation and class action litigation.

56. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible; resolving the claims of class members, based on virtually identical facts and law, would promote judicial efficiency and provide appropriate relief from defendants' wrongdoing.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the class, and against Defendants, for:

    I.    treble damages;

    II.    punitive damages;

    III.    injunctive relief;

    IV.    attorney's fees, litigation expenses and costs of suit; and

    V.    such other or further relief as the Court deems proper.

### COUNT II - ELECTRONIC FUNDS TRANSFER ACT

57. Plaintiff incorporates herein paragraphs 1 – 50.

58. The Electronic Funds Transfer Act, 15 U.S.C. §1693 *et seq.* ("EFTA"), provides in part as follows:

> §1693e - Preauthorized Transfers
>
> (a) A preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made….
>
> (b) In the case of preauthorized transfers from a consumer's account to the same person which may vary in amount, the financial institution or designated payee shall, prior to each transfer, provide reasonable advance notice to the consumer, in accordance with regulations of the Board, of the amount to be transferred and the scheduled date of the transfer."

59. A preauthorized electronic fund transfer is defined in the EFTA as "an electronic fund transfer authorized in advance to recur at substantially regular intervals." 15 U.S.C. §1693a(10).

60. All debits by Defendants to Plaintiff's and other Health Club members' bank accounts for monthly membership dues are preauthorized electronic fund transfers.

61. The EFTA also prohibits unauthorized electronic fund transfers, whether recurring or not.

62. Defendants violated the EFTA by debiting the bank accounts of Plaintiff and of other Health Club members without authority.

63. Defendants are liable under 15 U.S.C. §1693m for statutory and actual damages, reasonable attorney's fees and costs.

## CLASS ALLEGATIONS

64. Pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3), Plaintiff brings Count II on behalf of a class. The class consists of all Health Club members whose bank accounts were debited through an unauthorized electronic fund transfer, whether recurring or not, or who otherwise suffered a violation of the EFTA by either Defendants' act or omission.

65. Defendants violated the EFTA by debiting the bank accounts of Plaintiff and of other Health Club members without authority.

66. The class is so numerous that joinder is impracticable. On information and belief, based on (a) the use of form letters and form statements, (b) the number of Evolution Fitness Clubs and persons employed by them, there are more than 50 members of the class.

67. There are questions of law and fact common to the members of the class, which predominate over any questions that affect only individual class members. The predominant common questions include:

   (a) whether Defendants had a practice of taking money from class members' bank accounts through electronic funds transfers without written authorization, and

      (b)     the appropriate relief due such class members.

68. Plaintiff's claim is typical of the claims of the class members. All claims are based on the same factual and legal theories.

69. Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in complex civil litigation and class action litigation.

70. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible; resolving the claims of class members, based on virtually identical facts and law, would promote judicial efficiency and provide appropriate relief from Defendants' wrongdoing.

WHEREFORE, Plaintiff request that the Court enter judgment in favor of Plaintiff and the class, and against Defendants, for:

        I. statutory damages;

        II. actual damages;

        III. injunctive relief;

        IV. attorney's fees, litigation expenses and costs of suit; and

        V. such other or further relief as the Court deems proper.

## COUNT III - ILLINOIS CONSUMER FRAUD ACT

71. Plaintiff incorporates paragraphs 1 - 50.

72. 815 ILCS 505/2Z provides that a violation of the Physical Fitness Services Act constitutes a violation of the Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("ICFA").

73. Defendants violated the Physical Fitness Act and, thus, the ICFA, by increasing Plaintiff's and the members' payment obligation without execution of a new contract complying with the PFSA.

74. In addition, it was unfair and in violation of 815 ILCS 505/2 for Defendants to increase the consumer's payment obligation effective within less than the 30 days originally required to terminate the Agreement.

75. The Agreement does not state the amount of or a formula for any such increase, the total payment obligation on the Agreement under such increased rate, the time of any such increase, or the term of any such increase. The Agreement is unenforceable as a result.

76. Plaintiff and the members of the class defined below were injured by defendants' violations.

## CLASS ALLEGATIONS

77. Pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), Plaintiff brings Count III on behalf of a class, consisting of all customers of Defendants in the State of Illinois whose payment obligations increased without execution of a new contract providing for such obligation or who otherwise suffered a violation of the Illinois Consumer Fraud Act by either Defendants' act or omission.

78. The class is so numerous that joinder is impracticable. On information and belief, based on (a) the use of form letters and form statements; and (b) the number of Health Clubs and persons employed by them, there are more than 50 members of the class.

79. There are questions of law and fact common to the members of the class, which predominate over any questions that affect only individual class members. The predominant common questions include

(a) whether the PFSA and Consumer Fraud Act allow a physical fitness center to increase the amounts payable by the consumer without execution of a contract providing for the new terms and otherwise complying with the PFSA, and

(b) the appropriate relief to class members.

80. Plaintiff's claim is typical of the claims of the class members. All claims are based on the same factual and legal theories.

81. Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in complex civil litigation and class action litigation.

82. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible; resolving the claims of class members, based on virtually identical facts and law, would promote judicial efficiency and provide appropriate relief from Defendants' wrongdoing.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the class, and against Defendants, for:

I. treble damages;

    II.  punitive damages;

    III.  injunctive relief;

    IV.  attorney's fees, litigation expenses and costs of suit; and

    V. such other or further relief as the Court deems proper.

## COUNT IV - BREACH OF CONTRACT

83.    Plaintiff incorporates paragraphs 1-50.

84.    Defendants entered into contracts in the form of the Agreement with their customers in the State of Illinois.

85.    Defendants breached those contracts by imposing one-time charges and charges for payment by credit card that are not included in the Agreement and are not authorized by the parties to the Agreement.

86.    Under Illinois law, statutes in effect at the time a contract is executed are incorporated as a term of the contract.

87.    Defendants breached their contracts by increasing the consumer's payment obligation without execution of a new contract complying with the Physical Fitness Act or the ICFA.

88.    Plaintiff and other class members performed all obligations incumbent upon them under their contracts.

89.    Plaintiff and the members of the class defined below were injured by Defendants' breach of contract.

CLASS ALLEGATIONS

90. Pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), Plaintiff brings Count IV on behalf of a class, consisting of all customers of Defendants in the State of Illinois whose payment obligations increased without execution of a new contract providing for such obligation or whose contracts with either Defendant were breached by either Defendant.

91. The class is so numerous that joinder is impracticable. On information and belief, based on (a) the use of form letters and form statements; and (b) the number of Evolution Fitness Clubs and persons employed by them, there are more than 50 members of the class.

92. There are questions of law and fact common to the members of the class, which predominate over any questions that affect only individual class members. The predominant common questions include:

(a) whether Defendants violated their contracts by increasing the amounts payable by the consumer without execution of a contract providing for the new terms and otherwise complying with the PFSA, and

(b) the appropriate relief to class members.

93. Plaintiff's claim is typical of the claims of the class members. All claims are based on the same factual and legal theories.

94. Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in complex civil litigation and class action litigation.

95. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible; resolving the claims of class members, based on virtually identical facts and law, would promote judicial efficiency and provide appropriate relief from Defendants' wrongdoing.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the class, and against Defendants, for:

(1) compensatory damages;

(2) costs of suit; and

(3) such other or further relief as the Court deems proper.

Respectfully submitted,

/s/ Jeffrey Grant Brown
Attorney for Plaintiff


Jeffrey Grant Brown
Jeffrey Grant Brown, P.C.
221 North LaSalle Street
Suite 1414
Chicago, Illinois 60601
(312) 789-9700